**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**CASE NO.:**

**SCOTT SMITH,**
**an Individual,**

**Plaintiff,**

**v.**

**REPUBLIC SERVICES OF FLORIDA, L.P.,**
**a Foreign Limited Partnership,**

**Defendant.**
_______________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL WITH INJUNCTIVE AND DECLARATORY RELIEF REQUESTED

Plaintiff, **SCOTT SMITH** ("Plaintiff"), by and through his undersigned counsel, files this Complaint against Defendant, **REPUBLIC SERVICES OF FLORIDA, L.P.** ("Defendant"), and states as follows:

## INTRODUCTION

1. Plaintiff brings this action against Defendant for race and color discrimination and retaliation to pursuant to the Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act, Chapter 760, Florida Statutes ("FCRA"), and for racial discrimination and retaliation pursuant to 42 U.S.C. § 1981 ("Section 1981") to recover from Defendant back pay, other monetary damages, equitable relief, front pay, declaratory relief, compensatory damages, punitive

damages, and reasonable attorneys' fees and costs.

**PARTIES, JURISDICTION AND VENUE**

2. Plaintiff is an adult individual.

3. Defendant is a Foreign Limited Partnership that is located and does business in, among others, Polk County, Florida, and is therefore within the jurisdiction of the Court.

4. At all times relevant hereto, Plaintiff was an employee of Defendant.

5. Plaintiff worked for Defendant in Polk County, Florida, and this venue is therefore proper.

6. This Court has jurisdiction over Plaintiff's Title VII and Section 1981 claims pursuant to 28 U.S.C. § 1331, as they arise under federal law.

7. This Court also has supplemental jurisdiction over Plaintiff's FCRA claims, as they arise out of the same operative facts and circumstances as his Title VII and Section 1981 claims.

8. At all times material, Plaintiff was protected during his employment with Defendant by the FCRA, Title VII, and Section 1981 because Plaintiff is a Samoan and Mexican male with a medium-dark complexion who is perceived by others to be an African-American man, which is a protected category under Title VII and the FCRA.

9. At all times material, Plaintiff was protected during his employment

with Defendant by the FCRA, Title VII, and Section 1981 because Plaintiff suffered an adverse employment action as a result of his objections to racial discrimination.

10. Defendant was at all times an "employer" as envisioned by Title VII, the FCRA, and Section 1981 as it employed in excess of fifteen (15) employees.

## CONDITIONS PRECEDENT

11. On or around November 20, 2025, Plaintiff dual-filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR") alleging racial discrimination and retaliation against Defendant.

12. On or around August 1, 2026, the EEOC issued a Notice of Right to Sue against Defendant, giving Plaintiff the right to bring a civil action on his federal discrimination claims within 90 days of his receipt of the same.

13. More than 180 days have passed since the filing of the Charge of Discrimination without a determination from the FCHR, giving Plaintiff the right to bring a civil action on his state discrimination claims.

14. Plaintiff timely files this action within the applicable period of limitations against Defendant.

15. All conditions precedent to this action have been satisfied and/or waived.

## FACTUAL ALLEGATIONS

16. Plaintiff, a Samoan/Mexican man of medium-dark complexion, worked for Defendant as a Diesel Tech Apprentice from September 16, 2024, until his termination on February 5, 2025.

17. Due to his skin color, Plaintiff is perceived by others as a Black man.

18. During his tenure, Plaintiff was a reliable employee and had no notable attendance issues.

19. Unfortunately, Plaintiff was subjected to persistent and severe race and color discrimination based upon the perception that he is a Black man, creating a hostile work environment.

20. On September 21, 2024, Defendant Lead Tech Christopher Fritch ("Mr. Fritch") said, "I ain't no nigger lover!" while sitting at the clerk's desk in the Mechanic's Garage, speaking on the cell phone.

21. Plaintiff was the only person of color present at the time.

22. On October 12, 2024, Plaintiff overheard a co-worker, Elisa Sohn ("Ms. Sohn"), say, "That's that nigger's problem," to Kyle Rimes ("Mr. Rimes"), who served as Plaintiff's Mentor.

23. Earlier that day, Plaintiff had informed Mr. Rimes about issues he was experiencing with a hotel booked for him through the company, and Plaintiff believes that Mr. Rimes and Ms. Sohn were discussing those issues at the time of her comment.

24. On October 28, 2024, while performing a preventative maintenance inspection, Plaintiff overheard Defendant's Maintenance Supervisor, Tommy Pennington ("Mr. Pennington"), say, "Those people are unable to do this job," referring to non-whites as "those people."

25. Plaintiff was also, at times, addressed as "boy" by both Mr. Rimes and Mr. Fritch.

26. The term "boy" has historically been used as a racial epithet to demean and infantilize adult Black men.

27. On or about November 5, 2024, Plaintiff filed his **first EEOC complaint** against Defendant for racial discrimination.

28. The complaint was submitted to Defendant's Human Resources ("HR") Manager and Equal Opportunity ("EO") Representative, John Batemen ("Mr. Batemen").

29. During a meeting with Mr. Batemen and Investigator Toby Staats ("Investigator Staats"), Investigator Staats advised Plaintiff that he "could be fired" if nothing came of the EO Inquiry, which is unlawful under Title VII and the FCRA.

30. Following this first EEOC complaint and investigation, Plaintiff was given the silent treatment by his co-workers and was socially shunned in the workplace.

31. On November 7, 2024, Plaintiff reported to Defendant's Maintenance

Manager, David Cooper ("Mr. Cooper") that his assigned mentor, Mr. Rimes, was often unavailable to provide the guidance and training necessary for him to learn and develop effectively.

32. Rather than addressing Plaintiff's concerns, Mr. Cooper accused him of not working fast enough and imposed a new requirement that he complete Preventative Maintenance Schedule-A tasks within 1.75 hours.

33. Mr. Cooper's response failed to consider Plaintiff's legitimate request for adequate mentorship and training.

34. Mr. Rimes was given favor or deference because he is white.

35. There was no improvement in Mr. Rimes's mentorship nor was Plaintiff assigned to a new mentor.

36. Afterward, Mr. Rimes began more openly mocking Plaintiff's perceived race and color.

37. On or about December 4, 2024, Plaintiff attended a Reward Dinner that the outgoing General Manager funded for a positive performance for the year.

38. Around dinner time, in the lounge, Mr. Rimes mocked Plaintiff by saying "I'm hungry" in a racially stereotyped "Black voice," commonly referred to as a "blaccent."

39. This remark was made within earshot of Ms. Sohn and Defendant's Lead Technician, Jason Schroeder ("Mr. Schroeder").

40. On or about January 6, 2025, Plaintiff filed a **<u>second EEOC complaint</u>** against the Maintenance Supervisor, Tommy Pennington ("Mr. Pennington"), following Mr. Pennington's statement, which occurred in at a common area (Garage) clerk's desk, while speaking on the cell phone: "That's why they didn't hire him in H-Town, cause he's a nigger!", referring to "H-Town" as Defendant's Houston, TX location.

41. On January 9, 2025, Plaintiff had a meeting with Mr. Bateman, Mr. Cooper, and Investigator Staats, during which he was informed that Investigator Staats could not confirm any wrongdoing by Defendant employees, based on the first complaint.

42. The racially biased comments continued following the failed investigation.

43. Observing that such behavior went unaddressed, Mr. Schroeder also began participating in the race/color based harassment.

44. On January 17, 2025, Plaintiff heard Mr. Schroeder say, "I'm giving that nigger something to do" while Plaintiff was attempting to speak to his mentor, Mr. Rimes.

45. Following this incident, Plaintiff made a *verbal* complaint to HR/EO Representative, Mr. Batemen (**<u>third EEOC complaint</u>**).

46. After Plaintiff's third complaint, Plaintiff was called into a meeting

with Mr. Cooper and Defendant's Morning Supervisor, Chris Pasquale ("Mr. Pasquale").

47. During the meeting, Mr. Cooper accused Plaintiff, who was still an Apprentice, of performing "too slow," even though Plaintiff pleaded for additional mentorship and training due to his mentor's racially discriminatory bias.

48. On January 28, 2025, Mr. Bateman and HR Representative Mary Boyer ("Ms. Boyer") invited Plaintiff to a meeting.

49. During the meeting, Mr. Bateman told Plaintiff he was not performing well in his role.

50. Mr. Bateman offered Plaintiff the "opportunity" to resign in exchange for two to three weeks of severance pay.

51. Plaintiff declined this offer and was permitted to return to work.

52. Three (3) days after Plaintiff was encouraged to resign, a second meeting with Investigator Staats was held on or about January 31, 2025, to address the second and third EEOC complaints.

53. Mr. Bateman was also present at this meeting.

54. During the meeting, Plaintiff was directly asked whether he believed Mr. Pennington was a "racist," to which he responded, "Yes."

55. Fleet Manager David Cooper ("Mr. Cooper") was also simulcasted to the meeting, and heard Plaintiff's response.

56. Notably, Investigator Staats confirmed that the investigation into the second and third complaints **remained open**.

57. Just five (5) days later, on February 5, 2025, Defendant terminated Plaintiff's employment, effective immediately.

58. Defendant claimed it was due to a performance mistake, however, the mistake was negligible in terms of damage and disruption to business operations.

59. It is clear that Defendant terminated Plaintiff due to his race and color, as well as his EEOC complaints regarding the discrimination Plaintiff had been subjected to.

60. Any other "reason" theorized after the fact by Defendant or its attorneys for Defendant's termination of Plaintiff's employment is pure pretext.

61. Defendant did not have a good faith basis for its actions.

62. Defendant did not have a legitimate, non-discriminatory, non-retaliatory reason, for its actions.

63. But-for Plaintiff's perceived race, he would not have received the discrimination or adverse employment actions that followed.

64. As a result of Defendant's illegal conduct, Plaintiff has suffered damages, including loss of employment, wages, benefits, and other remuneration to which he is entitled.

65. Plaintiff has retained the law firm of RICHARD CELLER LEGAL,

P.A., to represent him in the litigation and has agreed to pay the firm a reasonable fee for its services.

**COUNT I: RACE DISCRIMINATION IN VIOLATION OF TITLE VII HOSTILE WORK ENVIRONMENT**

66. Plaintiff re-alleges and re-adopts the allegations contained in Paragraphs 1 through 6, 8, 10 through 12, 14 through 28, 31 through 44, and 57 through 65, above.

67. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against race discrimination under Title VII.

68. Plaintiff is a Samoan/Mexican man whom Defendant's employees and supervisors perceived as Black.

69. During Plaintiff's employment, Defendant's employees and supervisors repeatedly subjected him to anti-Black racial slurs, racially derogatory remarks, and racial stereotypes.

70. Defendant discriminated against Plaintiff in the terms, conditions, and privileges of his employment by denying him adequate training and mentorship, imposing discriminatory performance expectations, and terminating his employment on February 5, 2025.

71. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an intimidating, hostile, and abusive working environment.

72. Plaintiff's actual race and/or perceived Black race was a motivating factor in Defendant's discriminatory treatment and termination of Plaintiff.

73. Defendant's discriminatory comments and actions were egregious, and provide direct evidence of its discriminatory motive to discriminate against Plaintiff.

74. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

75. Plaintiff has suffered damages as a result of Defendant's illegal conduct toward him.

76. The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

77. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 2000e-5(k).

78. Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE,** Plaintiff requests a judgment in his favor and against Defendant for his actual and compensatory damages, including, but not limited to,

front pay, back pay, emotional distress damages, and punitive damages, as well as his costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed proper by this Court.

**COUNT II: RACE DISCRIMINATION IN VIOLATION OF THE FCRA HOSTILE WORK ENVIRONMENT**

79. Plaintiff re-alleges and re-adopts the allegations contained in Paragraphs 1 through 5, 7 through 8, 10 through 11, 13 through 28, 31 through 44, and 57 through 65, above.

80. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against race discrimination under the FCRA, Chapter 760, Florida Statutes.

81. Plaintiff is a Samoan/Mexican man whom Defendant's employees and supervisors perceived as Black.

82. During Plaintiff's employment, Defendant's employees and supervisors repeatedly subjected him to anti-Black racial slurs, racially derogatory remarks, and racial stereotypes.

83. Defendant discriminated against Plaintiff in the terms, conditions, and privileges of his employment by denying him adequate training and mentorship, imposing discriminatory performance expectations, and terminating his employment on February 5, 2025.

84. The harassment was sufficiently severe or pervasive to alter the terms

and conditions of Plaintiff's employment and create an intimidating, hostile, and abusive working environment.

85. Plaintiff's actual race and/or perceived Black race was a motivating factor in Defendant's discriminatory treatment and termination of Plaintiff.

86. Defendant's discriminatory comments and actions were egregious, and provide direct evidence of its discriminatory motive to discriminate against Plaintiff.

87. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

88. Plaintiff has suffered damages as a result of Defendant's illegal conduct toward him.

89. The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

90. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to Section 760.11(5), Florida Statutes.

91. Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE,** Plaintiff requests a judgment in his favor and against Defendant for his actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as his costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed proper by this Court.

## COUNT III: RETALIATION IN VIOLATION OF TITLE VII

92. Plaintiff re-alleges and re-adopts the allegations contained in Paragraphs 1 through 6, 9 through 12, and 14 through 65, above.

93. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against being retaliated against for opposing discrimination under Title VII.

94. The retaliation to which Plaintiff was subjected was based on his opposition to Defendant's illegal and discriminatory actions based on race.

95. Plaintiff's discharge was in very close temporal proximity to his objections to Defendant that he had been discriminated against based on race.

96. Plaintiff's objections constituted protected activity under Title VII.

97. Plaintiff was discharged as a direct result of his objections to discrimination based on race.

98. Plaintiff's objections to Defendant's conduct, and his discharge, are causally related.

99. Defendant's stated reasons for Plaintiff's adverse employment action are a pretext.

100. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

101. Plaintiff has suffered damages as a result of Defendant's illegal conduct toward him.

102. The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

103. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 2000e-5(k).

104. Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE,** Plaintiff requests a judgment in his favor and against Defendant for his actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as his costs and attorneys' fees, declaratory and injunctive relief, and such other and

further relief as is deemed proper by this Court.

**COUNT IV: RETALIATION IN VIOLATION OF THE FCRA**

105. Plaintiff re-alleges and re-adopts the allegations contained in Paragraphs 1 through 5, 7, 9 through 11, and 13 through 65, above.

106. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against being retaliated against for opposing discrimination under Section 760.10(7), Florida Statutes.

107. The retaliation to which Plaintiff was subjected was based on his opposition to Defendant's illegal and discriminatory actions based on race.

108. Plaintiff's discharge was in very close temporal proximity to his objections to Defendant that he had been discriminated against based on race.

109. Plaintiff's objections constituted protected activity under the FCRA.

110. Plaintiff was discharged as a direct result of his objections to discrimination based on race.

111. Plaintiff's objections to Defendant's conduct, and his discharge, are causally related.

112. Defendant's stated reasons for Plaintiff's adverse employment action are a pretext.

113. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages

and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

114. Plaintiff has suffered damages as a result of Defendant's illegal conduct toward him.

115. The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

116. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to Section 760.11(5), Florida Statutes.

117. Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE,** Plaintiff requests a judgment in his favor and against Defendant for his actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as his costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed proper by this Court.

## COUNT V: RACE DISCRIMINATION IN VIOLATION OF SECTION 1981 HOSTILE WORK ENVIRONMENT

118. Plaintiff re-alleges and re-adopts the allegations contained in Paragraphs 1 through 6, 8, 10, 16 through 28, 31 through 44, and 57 through 63,

above.

119. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against race discrimination under Section 1981.

120. Plaintiff is a Samoan/Mexican man whom Defendant's employees and supervisors perceived as Black.

121. During Plaintiff's employment, Defendant's employees and supervisors repeatedly subjected him to anti-Black racial slurs, racially derogatory remarks, and racial stereotypes.

122. Defendant discriminated against Plaintiff in the terms, conditions, and privileges of his employment by denying him adequate training and mentorship, imposing discriminatory performance expectations, and terminating his employment on February 5, 2025.

123. Plaintiff's actual race and/or perceived Black race was a motivating factor in Defendant's discriminatory treatment and termination of Plaintiff.

124. But for Defendant's discrimination based on Plaintiff's actual race and/or perceived Black race, Plaintiff would not have suffered the discriminatory treatment and termination alleged herein.

125. Defendant's discriminatory comments and actions were egregious, and provide direct evidence of its discriminatory motive to discriminate against Plaintiff.

126. The conduct of Defendant and its agents and employees proximately,

directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

127. Plaintiff has suffered damages as a result of Defendant's illegal conduct toward him.

128. The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

129. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988.

130. Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE,** Plaintiff requests a judgment in his favor and against Defendant for his actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as his costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed proper by this Court.

## **COUNT VI: RETALIATION IN VIOLATION OF SECTION 1981**

131. Plaintiff re-alleges and re-adopts the allegations contained in

Paragraphs 1 through 6, 9 through 10, and 16 through 65, above.

132. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against being retaliated against for opposing discrimination under Section 1981.

133. The retaliation to which Plaintiff was subjected was based on his opposition to Defendant's illegal and discriminatory actions based on race.

134. Plaintiff's discharge was in very close temporal proximity to his objections to Defendant that he had been discriminated against based on race.

135. Plaintiff's objections constituted protected activity under Section 1981.

136. Plaintiff was discharged as a direct result of his objections to discrimination based on race.

137. Plaintiff's objections to Defendant's conduct, and his discharge, are causally related.

138. Defendant's stated reasons for Plaintiff's adverse employment action are a pretext.

139. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

140. Plaintiff has suffered damages as a result of Defendant's illegal conduct toward him.

141. The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle him to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

142. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988.

143. Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE,** Plaintiff requests a judgment in his favor and against Defendant for his actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, and punitive damages, as well as his costs and attorneys' fees, declaratory and injunctive relief, and such other and further relief as is deemed proper by this Court.

***(Remainder of page left intentionally blank)***

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 28th day of October, 2026.

Respectfully Submitted,

***/s/ Tanner M. Borges***
Tanner M. Borges, Esq.
Florida Bar No. 1035473
RICHARD CELLER LEGAL, P.A.
7951 SW 6th St, Suite 316
Plantation, Florida 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
E-Mail: tanner@floridaovertimelawyer.com
*Attorneys for Plaintiff*